UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

JOSEPH STORY )
 )
v. ) NO. 2:09-cv-51; 2:02-cr-22
 ) *Judge Jordan*
UNITED STATES OF AMERICA )

## MEMORANDUM OPINION

Joseph Story, a federal prisoner confined in the FCI, Beaumont, Texas, has filed this *pro se* motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, as well as two motions to amend his pleading, (Docs. 176, 190, and 194, in the criminal case, No. 2:02-cr-22). The United States has filed a response to the motion to vacate and petitioner a reply, (Docs. 181 and 183). For the reasons which follow, all petitioner's motions will **DENIED**.

### I. Motions to Amend

In petitioner's motions to amend, (Docs. 190 and 194), citing to *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), *Carachuri-Rosendo v. Holder*, _ U.S. _, 130 S.Ct. 2577 (2010), and *United States v. Pruitt*, 545 F.3d 416 (6th Cir. 2008), he proposes to add a claim that his attorney was ineffective for failing to argue that his client should not have received and is actually innocent of the sentence enhancement

penalty imposed under 21 U.S.C. § 851.[1] Petitioner, who had been previously convicted of a North Carolina felony drug offense, was sentenced to an enhanced mandatory minimum twenty-year sentence under 21 U.S.C. § 841(b)(1)(a). Petitioner's intended amendment is that, under the holdings in the cited cases, he is no longer subject to the enhanced sentencing provision under 21 U.S.C. § 841(b)(1)(A) because his North Carolina drug conviction, which triggered a mandatory minimum twenty-year sentence, no longer qualifies as a prior felony conviction for purposes of increasing his sentence.[2]

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the only time constraint for a federal prisoner to file a § 2255 motion was the prejudice which would ensue if the respondent were required to

---

[1] Section § 851 is the statute which imposes a notice requirement on the United States before it may seek, under 21 U.S.C. § 841(b)(1)(A), to enhance a sentence based on a defendant's prior felony drug convictions.

[2] As used in § 841(b)(1)(a), a "felony drug offense" means any state or federal drug offense punishable by more than one year's imprisonment. *Burgess v. United States*, 553 U.S. 124 (2008). *Simmons* makes it clear that, while a sentence of over one year could have been imposed on a hypothetical offender with the worst criminal history for the cocaine conviction at issue, the maximum sentence *petitioner* could have received, given *his* criminal background, was a ten-month sentence, (Doc. 194 at 5; Presentence Investigation Report, Part B. Defendant's Criminal History, ¶ 41). Thus, it appears that petitioner would have *no* qualifying predicate offenses for purposes of § 841(b)(1)(A) were he to be sentenced today.
2

respond to the motion to vacate due to a delay in filing. *See* Advisory Committee Note to 1976 Adoption to Rule 9, Rules Governing Section 2255 Proceedings. As a result of the AEDPA, however, a federal prisoner now has one year in which to file a § 2255 motion. *See* 28 U.S.C. § 2255(f). The limitation period runs from one of several events. The statute provides in pertinent part:

> A 1-year period limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
> . . .
>
> (1) the date on which the judgment of conviction becomes final;
> . . . .
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. . . .

28 U.S.C. § 2255(f)(1) and (f)(3).

In *Simmons*, the first case petitioner relies upon to support his motion to amend, the Fourth Circuit held that, under North Carolina's structured sentencing scheme, the maximum sentence for a particular defendant's offense hinges on his individual prior criminal history. In other words, the maximum sentence is not the highest sentence which could be imposed on an offender with the worst criminal history, but the highest sentence an individual offender can receive, given *his* prior criminal history. In

3

*Carachuri-Rosendo*, the Supreme Court held that a second or subsequent simple drug-possession conviction does not qualify as an aggravated felony under immigration law so as to lead to automatic removal. In the process of resolving the issue it was presented, the *Carachuri-Rosendo* court rejected the lower court's "hypothetical approach," which reasoned that, because the conduct could have been prosecuted as a recidivist simple possession under state law, it could have also been punished as a felony under federal law.

In *Pruitt*, the Sixth Circuit, relying on *United States v. Rodriquez*, 553 U.S. 377 (2008), determined that a defendant's prior record level must be considered in determining whether a North Carolina prior drug conviction was a crime "punishable" by a prison sentence exceeding one year, so as to qualify the convict for enhanced sentencing as a "career offender" under the guidelines.

The Court infers, from petitioner's assertion that his motions to amend are based on an "additional change in the law [which] has become available and made retroactive to cases on collateral review," (Doc. 194 at 1), that he is claiming that his amendments are timely-filed, because the holdings in the cited cases triggered the limitations statute in § 2255(f)(3), the third subsection.

4

## A. Subsection (3)

Under subsection (3), a petition is timely so long as it is filed within one year after the Supreme Court issues an opinion newly recognizing a right and holding that it applies retroactively to cases on collateral review. 28 U.S.C. § 2255(f)(3). Petitioner asserts that the *Simmons*, *Carachuri-Rosendo*, and *Pruitt* decisions fall within the scope of subsection (3) and, thus, that claims based on those holdings, such as is his amended claim, receive the benefit of a new statute of limitations beginning on the date those opinions were issued.

Petitioner's arguments are refuted by the very terms of statute. First of all, only *Supreme Court* decisions are counted for purposes of starting a new limitations period under subsection (3). *Simmons* was issued by the Fourth Circuit; *Pruitt* is a Sixth Circuit decision; and only *Carachuri-Rosendo* was a Supreme Court decision which might qualify as a subsection (3) event to create a new statute of limitations.

Secondly, the Supreme Court did not expressly state whether its *Carachuri-Rosendo* holding was a new rule. Nor did it find that the holding was retroactive to cases pending on collateral review. And the Supreme Court has concluded "that a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001); *see also Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993) ("Although new

5

rules always have retroactive application to criminal cases on direct review, we have held that they seldom have retroactive application to criminal cases on federal habeas.") (internal citations and punctuation marks omitted); *Shaeffer v. United States*, 2012 WL 1598061, *4 (E. D. Tenn. May 7, 2012) (ruling that *Carachuri-Rosendo* is not retroactive), *but see Tomlinson v. United States*, 2012 WL 1745484, *2 (E.D.N.C. May 16, 2012) (finding motion to vacate timely under § 2255(f)(3) because *Carachuri-Rosendo* is retroactive). Hence, the Supreme Court did not find the rule in *Carachuri-Rosendo* to be new or hold that it applies retroactively to cases on collateral review.

Third, even if *Carachuri-Rosendo* were a new rule to be applied retroactively to motions to vacate, that opinion was handed down on June 14, 2010, and petitioner's motion to amend was filed on October 14, 2011—one year and four months after *Carahuri-Rosendo* was decided. Thus, if it were appropriate to view the *Carachuri-Rosendo* opinion as a triggering event for a new limitations statute, the motion to amend would still be four months too late under subsection (3).

Fourth, the *Carachuri-Rosendo* opinion was tangentially relevant to the issue to hand, but the claim in *Pruitt* was directly on point with petitioner's proposed claim. Since *Pruitt* relied on another Supreme Court decision, *United States v. Rodriquez*, to resolve the claim presented, logic would almost compel the conclusion that the relevant

6

Supreme Court opinion which would control the § 2255(f)(3) analysis in the instant case is *Rodriquez*. *Pruitt*, 545 F.3d at 424 ("*Rodriquez* persuades us that it is necessary to consider the defendant's particular prior record level-and not merely the worst prior record level-in determining whether a conviction was for an offense 'punishable' by a term exceeding one year.") *Rodriquez* was issued on May 19, 2008—some five and a half weeks after petitioner's conviction became final, which as calculated below, was on April 8, 2009. Thus, if *Rodriquez* is viewed as the proper Supreme Case to be invoked as support for petitioner's § 2255(f)(3) argument, his motion to amend would be even more untimely under that decision.

For these reasons, the Court concludes that the third subsection in § 2255(f) does not apply to save the untimely motion to amend.

### B. Subsection (1)

This leaves for discussion the only other possible relevant triggering event—the conclusion of direct appeal. Under subsection (1), the one-year limitations period begins to run when the conviction becomes final. Petitioner's amended judgment arising from his second re-sentencing was entered on March 25, 2008, (Doc. 172), and no notice of appeal was filed. Thus, his conviction became final on April 8, 2008, which was ten days after entry of judgment, excluding weekends. *See* Fed. R.

7

Case 2:02-cr-00022-RLJ-MCLC Document 200 Filed 06/12/12 Page 7 of 20 PageID #: 181

App. P. 4(b)(1) and 26(a)(2) (2008).[3] Petitioner would have had one year from that date, or April 8, 2009, within which to file the proposed amendment.

The first motion to amend was filed on October 14, 2011 (under the mailbox rule in *Houston v. Lack*, 487 U.S. 266 (1987), *see also In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997)) — some two and a half years after the date on which lapsed the one-year limitations statute in § 2255(f)(1).

However, under Rule 15 of the Federal Rules of Civil Procedure, an amendment filed after the statute of limitations has expired which "relates back" to the original pleading is allowed under certain circumstances.[4] *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (applying Rule 15(c)(2) to § 2254 petitions); *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008) (applying Rule 15(c)(2) to § 2255 motions). Therefore, unless the claim "relates" back under Fed. R. Civ. P. 15(c)(2) to the claims alleged in the timely-filed initial petition, the proposed claim is time-barred. The question then is whether the amendments are timely because they "relate back" to the original filing date.

---

[3] Under the 2009 amendments to Rules 4 and 26, the deadline for filing a notice of appeal was extended from ten to fourteen days and the computation period modified to include weekends. Fed. R. App. P. 4(b)(1)(A) and 26(a)(1)(B).

[4] The Federal Rules of Civil Procedure may be applied to § 2255 motions. *See* Rule 12, Rules Governing Section 2255 Proceedings.

8

As the Supreme Court has explained, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims. *Mayle*, 545 U.S. at 659 (citation omitted). An amended § 2255 motion will not relate back if it asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

No claim similar in type to the new claim was raised in the original petition. True, the initial motion alleged claims of ineffective assistance of counsel (specifically, counsel's failures to raise issues regarding petitioner's rehabilitation efforts, the crack-powder cocaine disparity, and violations under *Miranda v. Arizona*, 384 U.S. 436 (1977)). But the error now alleged (innocence of the prior-felony-drug-conviction sentence enhancement) is not similar in type to one of the three asserted attorney shortcomings presented in that pleading. *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (finding that Rule 15 is not satisfied "merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance"). Because the three claims raised initially did not share "a common core of operative facts" with the proposed amendment, the claim offered in the motion to amend does not relate back to the claims offered originally in the motion to vacate.

Therefore, because the statute of limitations expired on April 8, 2009, as to petitioner's § 2255 motion and because petitioner did not file his motion to amend until October 14, 2011, it is clearly time-barred under subsection (1).

In view of the above reasoning, petitioner's motions to amend are untimely under 28 U.S.C. § 2255(f)(1) and, accordingly, will be **DENIED**, (Docs. 190 and 194).

## II. Motion to Vacate

### A. Standard Of Review

This Court must vacate and set aside a petitioner's conviction if it finds "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 434, 428 (1962)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively the petitioner is not entitled

10

to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### B. Factual Background

Most of the factual scenario was recounted in the magistrate's report and recommendation regarding petitioner's motion to suppress, (Doc. 51), which, in turn, was quoted in the Sixth Circuit's opinion in the first direct appeal, (Doc. 131).

On January 17, 2002, after petitioner had come to the attention of federal and state drug task force agents as a distributor of cocaine, he was arrested by a traffic officer. During his booking into a local jail, cocaine was discovered in his shoe, and he was charged with possession of crack cocaine for resale, possession of marijuana, and various driving offenses. Later that day, a drug task force agent visited petitioner at the jail, advised him of his constitutional rights, and mentioned that he was a target in a federal drug investigation and that it would be in his best interest to meet and cooperate with the authorities in the future. Petitioner gave no statement at that time, but after he was released, he contacted state and federal law enforcement authorities and, eventually, volunteered information involving his drug-related activities, associates, and quantities of narcotics.

Thereafter, petitioner was charged in an indictment with one count of conspiracy to distribute crack cocaine and two counts of distribution of crack, in violation of 21 U.S.C. § 846 and § 841(a)(1). Petitioner was tried to a jury in May of 2003, convicted of the conspiracy count and one distribution count, and then was sentenced to 360 months in prison. Following two successful appeals on sentencing issues, *United States v. Story*, 125 F. App'x 646, 2005 WL 566696 (6th Cir. Mar. 9, 2005); *United States v. Story*, 503 F.3d 436 (6th Cir. 2007), petitioner's sentence was lowered to 300 months due to a violation of the rule in *United States v. Booker*, 543 U.S. 220 (2005), and, respectively, to 240 months. Thence followed this instant motion to vacate.

### C. Law and Analysis

The Supreme Court has established a two-part test for determining when assistance of counsel is ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 376-79 (1993); *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient, that is, outside the "wide range of professional assistance." *Strickland*, 466 U.S. at 687. The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Id.* at 689. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 694. Moreover, an attorney "is

12

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690).

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 454-455 (quoting *Strickland*, 466 U.S. at 694). A petitioner must demonstrate that, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). A failure to show prejudice, even if a deficient performance is assumed, will doom a claim of ineffective assistance. *Strickland*, 466 U.S. at 693-94. Finally, a petitioner alleging ineffective assistance of counsel bears a heavy burden of proof. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006).

In his § 2255 motion, petitioner advances three claims of ineffective assistance of counsel at sentencing. During his guilty plea, sentencing, the first direct appeal, and the re-sentencing proceedings, petitioner was represented by his appointed attorney, William L. Francisco. At his second re-sentencing, retained attorney J. H. Heubert, of Columbus, Ohio, represented him. Petitioner attributes the first two alleged attorney errors to Mr. Heubert and the last one to Attorney Francisco.

1. *Rehabilitation Efforts*

Petitioner alleges that Mr. Heubert gave him ineffective assistance by failing to underscore and seek to capitalize on petitioner's post-conviction rehabilitation efforts. The Court had recognized such efforts in the first re-sentencing and petitioner theorizes that, had the Court understood its authority to depart on this basis, it could have imposed a sentence less than the 240-month statutory mandatory minimum sentence. The United States resists this claim by arguing, correctly, that it is legally in error because the Court lacked the authority under petitioner's circumstances to decrease his sentence beneath the statutory mandatory minimum sentence.

The Court sentenced petitioner to 240 months– below the guideline range of 262 to 327 months, (Doc. 168, Sentencing Memorandum at 4, Doc. 180, Re-Sent. Tr. at 3), but at the mandatory minimum sentence level. Even if Mr. Heubert had argued the issue petitioner maintains that he did not argue, the Court would not have been free to

14

depart below the statutory mandatory minimum sentence absent a motion to do so, filed by the government under 18 U.S.C. § 3553(e), or a finding that petitioner qualified for the "safety valve" pursuant to 18 U.S.C. § 3553(f). Petitioner's total criminal history points (15), among other factors, nudged him out of the reach of the safety valve provision because a defendant who is subject to a mandatory minimum sentence and who has more than one criminal history point is disqualified from safety valve sentencing. *United States v. Branch* 537 F.3d 582 (6th Cir 2008). Likewise, the government did not file a motion to depart below the minimum mandatory sentence.

The Court could not have done more for petitioner than it did and, thus, not only was there no deficiency of performance, there was no resulting prejudice either. There was no prejudice because, during petitioner's allocution at the second re-sentencing hearing, he mentioned his continuing participation in education programs, and the Court was receptive to and applauded those endeavors, before imposing the sentence, (Doc. 180 at 4-5).

2. *Crack/Powder Cocaine Disparity*

Petitioner presents, as the second alleged error, Mr. Heubert's failure to argue that the Court had discretion to go below the 240-month mandatory minimum sentence, based on the crack/powder cocaine disparity enshrined in the U.S. Sentencing Guidelines. In 2003, when petitioner first was sentenced, one gram of

15

crack cocaine yielded the same base offense level as 100 grams of powder cocaine. However that 100:1 disparity was addressed in Amendment 706, effective November 1, 2007, which modified the ratio to 18:1, resulting in a two-level reduction in the base offense level associated with each quantity of crack. As of March 3, 2008, Amendment 706 was to apply retroactively. *See* USSG § 1 B 1.10 (revised Dec. 11, 2007).

Petitioner is simply incorrect when he contends that counsel allowed the disparity issue to pass unnoticed because, in the Motion and Sentencing Memorandum Mr. Heubert filed on petitioner's behalf, he pointed out that "the crack-cocaine quantities associate with various offense levels have been changed to bring crack-cocaine-related sentences more in line with powder-cocaine-related sentences;" argued that those changes were retroactive under § 2D1.1(c)(2007) and § 1B1.10(2008); and sought "to benefit from the retroactive change in the guidelines when the Court re-sentences [petitioner] on March 24, 2008," (Doc. 168 at 3). Therefore, as this filing patently demonstrates, counsel expressly raised and argued the very issue which petitioner cites as an attorney shortcoming. Clearly, there was no deficiency of performance with respect to this sentencing issue on Mr. Heubert's part.

Furthermore, petitioner sustained no prejudice. Petitioner's second re-sentencing occurred on March 25, 2008, twenty-two days after the Amendment 706

16

became retroactive. Thus, the sentence he received reflected the new ratio as set forth in the revised Guidelines.

The Court concludes that this claim of ineffective assistance and warrants no relief.

3. *Suppression Issue*

In the final claim of ineffective assistance, petitioner charges that an FBI agent testified as to admissions of criminal conduct petitioner made to him after petitioner's arrest on state drug charges but before his federal indictment, despite the fact that petitioner had not been advised that he had a right to counsel. Petitioner filed a pretrial motion to suppress this evidence, but the Magistrate Judge held a hearing on the motion, concluded that the statements were not taken in violation of petitioner's constitutional right to counsel, and recommended that the motion be denied. No objections were filed. The district court adopted the report and recommendation and denied the suppression motion.

Petitioner maintains that Mr. Francisco should have objected to the recommendation in order to preserve the issue for appeal and, thereafter, should have appealed any adverse decision.

As the United States asserts in its response, this issue in fact was raised on appeal. The Sixth Circuit reviewed the magistrate's report, including the lower court's

conclusion that, based on *Texas v. Cobb*, 532 U.S. 162 (2001), petitioner's Sixth Amendment right to counsel, though triggered on the state drug charges, which had resulted in the appointment of counsel, had not attached to the investigation which culminated in his indictment for the federal cocaine offenses.

Even so, the Sixth Circuit deemed that counsel's failure to object to the report resulted in a forfeiture of the suppression claim, but went on to indicate that it agreed that petitioner's right to counsel had not been violated and that there was no basis to suppress the evidence: "[I]f we were we to reach the merits, we would find no error in the district court's analysis." *Story*, 125 F. App'x at 653, 2005 WL 566696 at *6. Given the indication by the Sixth Circuit that petitioner's right to counsel was not violated, respondent argues that no prejudice ensued from counsel's failure to object to the magistrate judge's adverse recommendation as to the suppression motion. The Court agrees.

Whether Mr. Francisco's failure to object to the report amounted to a deficiency of performance need not be evaluated if any attorney error did not result in prejudice. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). After all, a claim of ineffective assistance is evaluated under a two-part test, and "any deficiencies in counsel's performance must be

18

prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692.

Accordingly, the Sixth Circuit's observation that it "would find no error" in the disposition of petitioner's claim (i.e., that his Sixth Amendment right to counsel was violated by the introduction of the evidence), necessarily results in the conclusion that no prejudice ensued from the alleged deficiency and that petitioner cannot prevail on this claim of attorney error. Counsel's failure to challenge a finding which was not error in the first place did not cause petitioner to lose what he "otherwise would probably have won" and did not constitute ineffective assistance. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986).

### D. Conclusion

In light of the foregoing discussion, petitioner's § 2255 motion to vacate, set aside or correct his sentence will be **DENIED** and this case will be **DISMISSED**.

### E. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims

19

have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

An appropriate order will be entered separately.

**ENTER**:

_____
LEON JORDAN
UNITED STATES DISTRICT JUDGE